UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSE JONES,

        Plaintiff,                                        Hon. Ellen S. Carmody

v.                                                         Case No. 1:12-cv-1283

MICHIGAN DEPARTMENT
OF CORRECTIONS, et al.,

        Defendants.
_____/

**OPINION**

This matter is before the Court on Defendants' Motion for Summary Judgment. (Dkt. #60). On October 4, 2013, the parties consented to proceed in this Court for all further proceedings, including trial and an order of final judgment. 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Janet T. Neff referred this case to the undersigned. (Dkt. #53). For the reasons discussed herein, Defendants' motion is **granted** and this matter **terminated**.

**BACKGROUND**

Plaintiff initiated this action against the Michigan Department of Corrections (MDOC), Patricia Caruso, Daniel Heyns, Kathy Warner, Mary Berghuis, Maria Sahagun, and Rebecca Wright. The following allegations are contained in Plaintiff's Second Amended Complaint. (Dkt. #48). Plaintiff has been employed by the MDOC since 1998. (Dkt. #48 at ¶ 12). In 2009, Plaintiff initiated legal action the MDOC alleging discrimination and retaliation based on events that allegedly occurred between 2007 and 2009. (Dkt. #48 at ¶ 14). On October 6, 2010, Plaintiff and the MDOC reached a settlement resolving that matter. (Dkt. #48 at ¶ 15).

On October 1, 2010, Plaintiff learned that her uncle passed away. (Dkt. #48 at ¶ 17). Plaintiff's union membership entitled her to take three days off to attend her uncle's funeral. (Dkt. #48 at ¶ 17). On October 5, 2010, Plaintiff informed Human Resources Manager, Rebecca Wright, that she needed to take three days off, beginning October 7, 2010, to attend her uncle's funeral. (Dkt. #48 at ¶ 18). Wright informed Plaintiff that this was acceptable, but also instructed Plaintiff to inform Captain Maria Sahagun that she would be absent on the days in question. (Dkt. #48 at ¶ 18). Plaintiff immediately informed Sahagun of her impending absence, to which Sahagun responded, "you got it." (Dkt. #48 at ¶ 19). Two days later, however, on October 7, 2010, Sahagun informed Plaintiff that her time off request had not been approved and "she was to report to work or face sanctions." (Dkt. #48 at ¶ 20).

The MDOC "continued with what were ongoing investigations into [Plaintiff] as of the settlement date of October 6, 2010 after the settlement was finalized." (Dkt. #48 at ¶ 21). One of these investigations concerned allegations that Plaintiff improperly copied a "vacation book." (Dkt. #48 at ¶¶ 22-25). Plaintiff was subsequently suspended for five days as a result of this incident. (Dkt. #48 at ¶ 26). Beginning in October 2010, Plaintiff was "arbitrarily placed on medical verification requirements." (Dkt. #48 at ¶ 28).

Between October 2010 and September 2011, Plaintiff filed "at least" ten grievances and complaints with the Equal Employment Commission and the MDOC's Equal Employment Office. (Dkt. #48 at ¶ 29). These various grievances and complaints "were known to Defendants." (Dkt. #48 at ¶ 30). Defendants "treated [Plaintiff's] complaints and grievances less favorabl[y] than they treated complaints of white employees." (Dkt. #48 at ¶ 31).

In October 2010, Plaintiff was "denied sick leave benefits" while other employees "continued to be paid for their sick time used." (Dkt. #48 at ¶ 33). In or about October 2010, the MDOC issued Plaintiff "at least three counseling memorandums for unsatisfactory attendance." (Dkt. #48 at ¶ 34). Plaintiff was labeled "an attendance abuser" and placed on "interim service rating in January 2011." (Dkt. #48 at ¶ 35).

Plaintiff alleges that Defendants subjected her to unlawful retaliation, racial discrimination, and a hostile work environment in violation of Title VII. Plaintiff's claims against Defendants Caruso and Warner were previously dismissed. The remaining defendants now move for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."  *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.        Plaintiff has Failed to State a Claim for Relief Under Michigan Law**

In her Second Amended Complaint, drafted by counsel, Plaintiff asserts that the present action "is brought pursuant to the provisions of Title VII of the Civil Rights Act of 1964 (Title VII), as amended." (Dkt. #48 at ¶ 1). In the separate counts of her complaint, Plaintiff makes reference to Title VII only. (Dkt. #48 at ¶¶ 40-66). While Plaintiff alleges that this Court has jurisdiction over any ELCRA (which presumably refers to the Michigan Elliott-Larsen Civil Rights Act) claims, Plaintiff has failed to allege any such claims.

Defendants assert that to the extent that Plaintiff now seeks to assert any state law claims, such must be dismissed. The Court agrees. Plaintiff concedes that her complaint, on its face, articulates no state law claims. Nevertheless, Plaintiff asserts that she should be permitted to pursue state law claims because such are "inferable" from her Title VII claims. Even assuming such were the case, Plaintiff's position is contrary to Federal Rule of Civil Procedure 8 which obligates Plaintiff to provide Defendants with a "short and plain statement" of her claim(s) for relief. Fed. R. Civ. P. 8(a). Accordingly, the Court concludes that to the extent that Plaintiff seeks to assert any state law claims, such must be dismissed.

**II.       Plaintiff's Title VII Claims against Individual Defendants**

Plaintiff has asserted Title VII claims against the MDOC as well as several individuals employed by the MDOC. Plaintiff's Title VII claims against these individuals, however, must be dismissed.

Title VII provides that it "shall be an unlawful employment practice for an employer" to "discriminate against any individual. . .because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). If a person believes she has been subject to such discrimination, she may bring a civil against her "employer." 42 U.S.C. § 2000e-5(b), (f). Title VII defines the term "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees. . .and any agent of such a person." 42 U.S.C. § 2000e(b). Title VII does not define the term "agent," but such has been interpreted as "an individual who serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment." *Wathen v. General Electric Company*, 115 F.3d 400, 405 (6th Cir. 1997); *see also*, *Maudlin v. Inside Out Inc.*, 2014 WL 1342883 at *2 (S.D. Ohio, Apr. 3, 2014) (same).

While a plain reading of the above provisions may appear to support asserting a Title VII claim against certain supervisory individuals, the Sixth Circuit has concluded otherwise. In *Wathen*, the court found that "the statutory scheme itself indicates that Congress did not intend to impose individual liability on employees." *Wathen*, 115 F.3d at 406. The Court likewise found that "Title VII's remedial provisions are incompatible with the imposition of liability on individual employees." The court concluded, therefore, that "we find that the statute as a whole, the legislative history and the case law support the conclusion that Congress did not intend individuals to face liability under the definition of 'employer' it selected for Title VII." *Id.*

This does not mean, however, that a victim of unlawful discrimination has no recourse with respect to actions taken by individuals employed as supervisors or agents of an employer. As the *Wathen* court further concluded, "the obvious purpose of [Title VII's] agent provision was to incorporate respondeat superior liability into the statute." *Wathen*, 115 F.3d at 405-

06. Thus, for Title VII purposes, the unlawful actions undertaken by an individual supervisor or agent are attributable to the employer who is the appropriate party against whom to bring legal action. *Id.* Thus, Plaintiff's Title VII claims against Defendants Heyns, Berghuis, Sahagun, and Wright must be dismissed.

### III.            Plaintiff has Failed to Exhaust all her Title VII Claims

In her complaint, Plaintiff asserts claims of retaliation, hostile work environment, and racial discrimination based on various alleged incidents. Defendants assert that many of Plaintiff's claims must be dismissed, however, because Plaintiff has failed to first present them to the Equal Employment Opportunity Commission (EEOC). The Court agrees.

A plaintiff must satisfy two prerequisites before bringing a Title VII action in federal court. She must first file a charge of employment discrimination with the EEOC. *See Granderson v. University of Michigan*, 211 Fed. Appx. 398, 400 (6th Cir., Dec. 12, 2006); *Harris v. Giant Eagle, Inc.*, 133 Fed. Appx. 288, 292 (6th Cir., May 27, 2005). She must then initiate an action in federal court within 90 days of receiving a right-to-sue letter from the EEOC. *See Granderson*, 211 Fed. Appx. at 400; *Harris*, 133 Fed. Appx. at 292.

Plaintiff filed a complaint with the EEOC on July 8, 2011. (Dkt. #61, Exhibit A). In this complaint, Plaintiff alleged that she suffered discrimination based on race, retaliation, and disability. Plaintiff's complaint was based upon two alleged incidents. First, Plaintiff alleged that she was denied sick leave pay for three days[1] that she was absent from work due to illness. Second, Plaintiff alleged that on June 24, 2010, she was issued "several Counseling Memorandums. . .for

---

[1] The three dates in question are September 30, 2010, November 16, 2010, and November 17, 2010.

-8-

attendance issues and one memorandum which ordered [Plaintiff] to produce specific medical verification for requested sick leave" for the next 180 days. On September 30, 2011, Plaintiff amended her EEOC complaint to also assert the claim that she received a five-day suspension in February 2011, "in retaliation for having filed several EEOC discrimination complaints." (Dkt. #61, Exhibit B). On August 23, 2012, the EEOC dismissed Plaintiff's complaint and issued a right-to-sue letter. (Dkt. #61, Exhibit D).

A plaintiff cannot assert a Title VII claim in federal court unless she first pursued such before the EEOC. *See Kuhn v. Washtenaw County*, 709 F.3d 612, 627 (6th Cir. 2013) ("a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge"); *Tisdale v. Federal Express Corp.*, 415 F.3d 516, 527 (6th Cir. 2005) ("if a plaintiff did not first present a claim to the [EEOC], that claim may not be brought before the federal courts on appeal"). The Sixth Circuit has cautioned, however, that a pro se plaintiff's complaint to the EEOC must be "liberally construed." *Tisdale*, 415 F.3d at 527; *see also*, *Duggins v. Steak 'N Shake*, 195 F.3d 828, 831-32 (6th Cir. 1999). Nevertheless, "the judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Tisdale*, 415 F.3d at 527. Accordingly, "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Tisdale*, 415 F.3d at 527.

In the present action, Plaintiff asserts claims of retaliation, racial discrimination, and hostile work environment. The claims alleged in Plaintiff's EEOC complaint were based on the factual allegations described above. Plaintiff clearly alleged in her EEOC complaints that the incidents described therein constituted retaliation and racial discrimination. Plaintiff did not,

however, allege in her EEOC complaints that she was subjected to a hostile work environment. To prevail on a hostile work environment claim, Plaintiff must establish that she was subjected to race-based harassment that "unreasonably interfered with [her] work performance by creating an environment that was intimidating, hostile, or offensive." *Kuhn*, 709 F.3d at 627.

Even interpreting Plaintiff's EEOC complaints liberally, the Court finds that they fail to allege facts that could reasonably be expected to prompt an investigation of a hostile work environment claim. *See Id.* ("inclusion in an EEOC charge of discrete acts of discrimination to support a claim of disparate treatment cannot, standing alone, support a subsequent, uncharged claim of hostile work environment unless the allegations in the complaint can be reasonably inferred from the facts alleged in the claim"). Accordingly, Plaintiff's hostile work environment claim must be dismissed. Moreover, Plaintiff's retaliation and racial discrimination claims in the present action are limited to the aforementioned incidents presented in Plaintiff's EEOC complaints. Thus, to the extent Plaintiff has asserted in this action retaliation or racial discrimination claims based on incidents not included in her EEOC complaints, such claims must be dismissed.

### IV.     Plaintiff's Retaliation Claims

As discussed in the preceding section, the following retaliation claims are properly before the Court: (1) Plaintiff was denied sick leave pay for three days that she was absent from work due to illness; (2) Plaintiff was required to provide "specific medical verification for requested sick leave" for a 180-day period beginning June 24, 2010; and (3) Plaintiff received a five-day suspension in February 2011.

Title VII makes it unlawful for an employer to discriminate against an employee because the employee engaged in conduct protected by Title VII. *See Laster v. City of Kalamazoo*, 746 F.3d 714, 729-30 (6th Cir. 2014) (citing 42 U.S.C. § 2000e-3(a)). In the absence of direct evidence of unlawful retaliation, the familiar *McDonnell Douglas* burden shifting analysis applies. *Id.* at 730. Under this framework, the plaintiff bears the initial burden to demonstrate a prima facie case of retaliation. If the plaintiff makes the required showing, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. If the employer makes the necessary showing, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason "was not the true reason for the employment decision." While the burden of production shifts as described above, "the plaintiff bears the burden of persuasion through the process." *Id.*

To establish a prima facie case of retaliation, Plaintiff must establish the following: (1) she engaged in activity protected by Title VII; (2) the employer was aware of her protected activity; (3) the employer subsequently took an action "that was materially adverse to" Plaintiff; and (4) there exists a causal connection between the protected activity and the materially adverse action. *Laster*, 746 F.3d at 730. With respect to the causation element, Plaintiff must demonstrate that "her protected activity was a but-for cause of the alleged adverse action by the employer." *Montell v. Diversified Clinical Services, Inc.*, 757 F.3d 497, 504 (6th Cir. 2014) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, - - - U.S. - - -, 133 S.Ct. 2517, 2534 (2013)). This standard requires Plaintiff to demonstrate that the adverse action which she suffered was motivated by illegitimate factors only. *See, e.g., Seoane-Vazquez v. Ohio State University*, 577 Fed. Appx. 418 (6th Cir., Aug. 18, 2014)

("a Title VII plaintiff alleging retaliation *cannot* establish liability if [the adverse action she suffered] was prompted by both legitimate and illegitimate factors").

###### A. Sick Pay Claim

Plaintiff alleges that she was denied paid sick leave for absences, due to illness, on the following dates: (1) September 30, 2010; (2) November 16, 2010; and (3) November 17, 2010. Plaintiff alleges that she was denied paid sick leave as retaliation for the previous lawsuit that Plaintiff pursued against the MDOC. Because Plaintiff has presented no direct evidence of retaliation, her claim is subject to the burden-shifting analysis articulated above. Defendant MDOC argues that Plaintiff cannot establish the requisite causal element of her claim. Defendant further argues that even if Plaintiff can establish a prima facie case, the MDOC can demonstrate a legitimate, non-discriminatory rationale for the actions in question.

Pursuant to MDOC regulations applicable during the relevant time period, if an employee's sick leave balance was reduced to sixteen hours or less the employee can be required to provide, for a period of 180 days, "medical verification for all absences normally covered by sick leave." (Dkt. #64, Exhibit J). On or about June 24, 2010, Plaintiff was informed that because her sick leave balance had been reduced to four and one-half hours, she would be required, for "the next 180 days," to submit "medical documentation" to substantiate any requests for paid sick time. (Dkt. #64, Exhibit J).

Plaintiff was subsequently absent from work, due to illness, on the following dates: (1) September 30, 2010; (2) November 16, 2010; and (3) November 17, 2010. Because Plaintiff did not timely provide satisfactory documentation of her illness, she was not paid for the dates in

question. (Dkt. #66 at Page ID## 869, 873, 888). Plaintiff subsequently submitted satisfactory documentation and her absences on the three days in question were characterized in MDOC records as sick leave, Plaintiff was paid for the three days in question, and the memoranda indicating that Plaintiff failed to timely submit the proper documentation were removed from Plaintiff's personnel record. (Dkt. #61, Exhibit E at 58; Dkt. #65, Exhibit O; Dkt. #65, Exhibit T; Dkt. #67, Exhibit G at Page ID## 927-28).

Plaintiff has presented no evidence that the decision to initially not pay her for the three days in question was in any way related to her previous lawsuit against the MDOC. Instead, the evidence reveals that Plaintiff was not paid for the days in question because she did not timely submit sufficient documentation to support her request for sick leave. Thus, Plaintiff cannot establish that her protected activity (i.e., her previous lawsuit against the MDOC) was the sole reason she was not paid for the three days in question. Accordingly, Plaintiff cannot establish a prima facie case of unlawful retaliation with respect to this particular incident. Moreover, even if Plaintiff could establish her prima facie case, Defendant MDOC has presented ample evidence that the decision not to pay Plaintiff for the three days in question was prompted by legitimate factors unrelated to Plaintiff's previous lawsuit. Plaintiff has failed to demonstrate that the MDOC's proffered reason is simply a pretext. Defendant MDOC is entitled, therefore, to summary judgment as to this claim.

B.     Medical Verification Claim

Plaintiff asserts that beginning on or about June 24, 2010, for a period of 180 days, she was required to submit medical documentation to substantiate any requests for paid sick leave.

-13-

Plaintiff asserts that she was subjected to this requirement as retaliation for her previous lawsuit against the MDOC. As discussed above, however, the evidence reveals that Plaintiff, consistent with applicable policy, was subjected to this requirement because her sick leave balance decreased below a certain amount. Plaintiff cannot establish that her protected activity was the sole reason she was required to submit documentation before obtaining approval to receive paid sick leave. Thus, Plaintiff cannot establish a prima facie case of unlawful retaliation with respect to this requirement. Moreover, even if Plaintiff could establish her prima facie case, Defendant MDOC has demonstrated that its action was prompted by legitimate reasons unrelated to Plaintiff's protected conduct. Plaintiff has presented no evidence that the MDOC's proffered reason is simply a pretext. On the other hand, Defendant has submitted evidence that other employees were also required to submit medical documentation to obtain paid sick leave. (Dkt. #65, Exhibit T). Thus, Plaintiff cannot demonstrate that Defendant's proffered rationale is merely a pretext for unlawful discrimination. Accordingly, Defendant MDOC is entitled to summary judgment as to this claim.

        C.      Five Day Suspension Claim

Plaintiff alleges that she was suspended from work for five days because she made copies of a "vacation book."[2] Plaintiff asserts that she was suspended in retaliation for her previous lawsuit against the MDOC. The evidence, however, belies Plaintiff's allegations.

        Plaintiff's supervisor, Captain Maria Sahagun, submitted an affidavit regarding this particular incident. (Dkt. #65, Exhibit U). In her affidavit, Sahagun asserts the following. In June 2010, Sahagun learned that Plaintiff had made copies of the "monthly shift roster" which is utilized

---

[2] Plaintiff testified that the vacation book contains a record of when employees have vacation scheduled. (Dkt. #61, Exhibit E at 94-95). Plaintiff indicated that employees consult the vacation book when attempting to schedule vacation time. (Dkt. #61, Exhibit E at 94-95).

by MDOC supervisors to "make the schedules." The roster also contains "information about employees on suspension." Given the nature of the information contained therein, it "was not appropriate for [Plaintiff] to make copies of this roster." The monthly shift roster, as well as the "vacation book," were maintained in the "deputy warden's suite." Because Plaintiff inappropriately made copies of the shift roster, Sahagun instructed Plaintiff not to enter the deputy warden's suite "without a supervisor being present." Approximately two months later, Sahagun was notified that Plaintiff was in the deputy warden's suite without supervision. Sahagun entered the deputy warden's suite and asked Plaintiff why she had disregarded her direct order not to enter that particular area without supervision. Plaintiff responded in an aggressive manner and told Sahagun, "you better find someone else to mess with." Sahagun interpreted Plaintiff's response, both her words and actions, as disrespectful, hostile, and insubordinate.

In her deposition, Plaintiff testified that the vacation book is maintained by supervisors and is located in the deputy warden's suite. (Dkt #61, Exhibit E at 95-96). Plaintiff acknowledged that in June 2010, she was instructed by Sahagun not to enter the deputy warden's suite without supervision. (Dkt #61, Exhibit E at 92-93). Plaintiff conceded that in August 2010, she entered the deputy warden's suite and began looking through the vacation book. (Dkt #61, Exhibit E at 97-99). Plaintiff testified that when confronted by Captain Sahagun regarding her presence in the deputy warden's suite, she responded in an "elevated" tone of voice and told Sahagun, "I wasn't a toy and she needed to find somebody else to play with." (Dkt #61, Exhibit E at 98-99). As a result of this incident, Plaintiff was charged with insubordinate conduct. (Dkt. #64, Exhibit M; Dkt. #65, Exhibit Q). Plaintiff was found guilty of this infraction and given a five-day

suspension which was subsequently reduced to a four-day suspension. (Dkt. #64, Exhibit M; Dkt. #65, Exhibits Q and R).

Plaintiff has presented no evidence that the decision to suspend her was in any way related to her previous lawsuit against the MDOC. Instead, the evidence reveals that Plaintiff was suspended because she engaged in insubordinate conduct. Plaintiff cannot establish that her protected activity (i.e., her previous lawsuit against the MDOC) was the sole reason she was suspended. Thus, Plaintiff cannot establish a prima facie case of unlawful retaliation with respect to this particular incident. Moreover, even if Plaintiff could establish her prima facie case, Defendant MDOC has presented ample evidence that the decision to suspend Plaintiff was prompted by legitimate factors unrelated to Plaintiff's previous lawsuit. Plaintiff has not established that the MDOC's proffered reason is simply a pretext. On the other hand, Defendant has submitted evidence that other employees were likewise suspended for engaging in insubordinate conduct. (Dkt. #65, Exhibit T). Thus, Plaintiff cannot demonstrate that Defendant's proffered rationale is merely a pretext for unlawful discrimination. Accordingly, Defendant MDOC is entitled to summary judgment as to this claim.

### V.       Plaintiff's Racial Discrimination Claims

Plaintiff also alleges that the adverse employment actions identified above constituted unlawful racial discrimination. The Court disagrees and concludes that Defendant MDOC is entitled to summary judgment as to these claims.

Title VII makes it illegal for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's race. . ." 42 U.S.C. § 2000e-2(a)(1). In the absence of direct evidence of discrimination, Plaintiff's claims are analyzed pursuant to the burden shifting framework described above. Even if the Court assumes that Plaintiff can establish a prima facie case of discrimination, Defendant, as discussed above, has demonstrated that the actions in question were undertaken for legitimate, non-discriminatory reasons. Plaintiff has not presented evidence that Defendant's proffered rationale is simply a pretext. Accordingly, Defendant MDOC is entitled to summary judgment as to Plaintiff's racial discrimination claims.

## CONCLUSION

For the reasons articulated herein, <u>Defendants' Motion for Summary Judgment</u>, (dkt. #60), is **granted** and this matter **terminated**. An Order consistent with this Opinion will enter.

Date:  November 19, 2014                     /s/ Ellen S. Carmody
                                             ELLEN S. CARMODY
                                             United States Magistrate Judge